**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MATHEW J. HORNE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 4:11CV 935 RWS(LMB)** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision

denying the application of Mathew J. Horne for Disability Insurance Benefits under Title II of the

Social Security Act, and Supplemental Security Income under Title XVI of the Act.  The cause

was referred to the undersigned United States Magistrate Judge for a Report and

Recommendation pursuant to 28 U.S.C. § 636 (b).  Plaintiff has filed a Brief in Support of

Plaintiff's Complaint.  (Document Number 14).  Defendant has filed a Brief in Support of the

Answer.  (Doc. No. 15).  Plaintiff has filed a Reply.  (Doc. No. 16).

**Procedural History**

On August 19, 2008, plaintiff filed his application for benefits, claiming that he became

unable to work due to his disabling condition on April 29, 2006.  (Tr. 111-23).  This claim was

denied initially, and following an administrative hearing, plaintiff's claim was denied in a written

opinion by an Administrative Law Judge (ALJ), dated March 15, 2010.  (Tr. 66-70, 7-23).

Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on April 11, 2011. (Tr. 1-3). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

### A.    ALJ Hearing

Plaintiff's administrative hearing was held on September 24, 2009. (Tr. 27). Plaintiff was present and was represented by counsel. (Id.). Also present was John Stephen Dolan, vocational expert. (Id.).

Plaintiff's attorney stated that he had sent a letter to the ALJ requesting that plaintiff be evaluated for Asperger's disorder.[1] (Tr. 33). The ALJ indicated that he had not received plaintiff's letter until the day prior to the hearing, and that he would hear the testimony and then take plaintiff's request under advisement. (Tr. 34).

The ALJ examined plaintiff, who testified that he was thirty-eight years of age, was single, and had no children. (Tr. 35). Plaintiff stated that he lived alone in a camper behind a home owned by his parents. (Id.).

Plaintiff testified that he completed one to two years of college. (Tr. 35-36). Plaintiff stated that he did not earn any degrees or certificates at the college level. (Tr. 36). Plaintiff testified that he last attended college in 2004. (Id.).

---

[1]A pervasive developmental disorder characterized by severe and enduring impairment in social skills and restrictive and repetitive behaviors and interests, leading to impaired social and occupational functioning but without significant delays in language development. Stedman's Medical Dictionary, 568 (28th Ed. 2006).

Plaintiff stated that he had a valid driver's license, and that he drove to the hearing. (Id.). Plaintiff testified that he drives one or two times a week to the grocery store. (Id.).

Plaintiff stated that he last worked at Wal-Mart in 2007. (Id.). Plaintiff testified that he worked as a gate guard, which involved greeting customers. (Tr. 37). Plaintiff stated that he worked twenty-five to thirty-five hours a week at this position, which lasted about four months. (Id.). Plaintiff testified that he was terminated because management did not like that he walked with a cane. (Id.). Plaintiff stated that he did not file for unemployment benefits after he was terminated from Wal-Mart. (Id.).

Plaintiff testified that he worked for Kelly Services for a few weeks in 2005 performing Christmas delivery work. (Tr. 38).

Plaintiff stated that he also worked for National Product Services in 2005 assembling items for Lowe's. (Id.). Plaintiff testified that he worked full-time at this position, which lasted about one year. (Id.). Plaintiff stated that he was terminated from this position because a new manager did not like him. (Id.).

Plaintiff testified that he worked as a delivery driver at Little Caesar's and Pizza Inn. (Tr. 39). Plaintiff stated that he also helped prepare pizzas at Pizza Inn. (Id.). Plaintiff testified that he worked part-time at each of these positions for periods of a few months. (Tr. 40).

Plaintiff stated that he worked part-time for the postal service sorting mail from 2001 to 2002. (Id.). Plaintiff testified that this position lasted less than six months. (Id.).

Plaintiff stated that he attempted to join the Army in 2002, but was never placed on active duty. (Tr. 40-41).

Plaintiff testified that he worked at Reliable Home Care, a group home for troubled

teenagers, in 2001. (Tr. 41). Plaintiff stated that he took care of a young man at this position. (Id.). Plaintiff testified that he worked at this position for six to nine months. (Id.).

Plaintiff stated that he worked for Ferrell's Electronics installing menu boards and computer systems for restaurants for six to seven months in 2000. (Id.).

Plaintiff testified that he worked for Family Center of Rolla for six to nine months in 1998 and 1999, performing customer service and stocking work. (Tr. 42).

Plaintiff stated that he worked full-time in the deli at Town and Country Supermarket for four to six months in 1998. (Id.).

Plaintiff testified that he worked part-time as a cook for Burger King for about six months in 1994 and 1995. (Tr. 43).

Plaintiff's attorney then examined plaintiff, who testified that he has been experiencing pain in his right shoulder since 2001. (Tr. 44). Plaintiff stated that he injured his left wrist and left foot in 2006, when he fell off a bridge. (Id.). Plaintiff testified that these three impairments prevent him from working. (Id.).

Plaintiff stated that he has a weak rotator cuff due to calcium spurs in the shoulder joint. (Id.). Plaintiff testified that his right shoulder started bothering him in 2001, and has gotten worse. (Id.). Plaintiff stated that he stopped working at the post office due to right shoulder pain. (Id.). Plaintiff testified that he was terminated because he was unable to maintain the necessary pace sorting mail. (Tr. 45). Plaintiff stated that he has been unable to move heavy objects or reach forward due to shoulder pain. (Id.). Plaintiff testified that he begins experiencing shoulder pain when he is working at a computer for a few hours. (Id.).

Plaintiff stated that he fell off a bridge on April 29, 2006, which resulted in left wrist and

left foot injuries.  (Id.).  Plaintiff testified that he broke a bone in his left wrist.  (Tr. 46).  Plaintiff stated that, after the bone was re-set, it did not heal properly.  (Id.).  Plaintiff testified that, as a result, he experiences pain and limitations in his left wrist.  (Id.).  Plaintiff stated that he has limited flexibility and strength.  (Id.).  Plaintiff testified that he experiences pain when he lifts a twelve-pack of soda.  (Id.).  Plaintiff stated that he was right-hand dominant.  (Tr. 57).

Plaintiff stated that he fractured his left foot, and it never healed properly.  (Tr. 47). Plaintiff testified that his left foot pain is "not so bad" when he walks with his cane, but his pain increases when he puts significant pressure on his foot.  (Id.).  Plaintiff stated that he never underwent surgery on his left foot due to finances.  (Id.).  Plaintiff testified that he walks with a cane, and that he holds the cane in his right hand.  (Id.).

Plaintiff stated that he is able to use his left hand, but he has decreased dexterity and strength.  (Tr. 48).

Plaintiff testified that his daily pain level is a two to three on a scale of one to ten if he avoids activities that increase his pain, such as working on the computer or lifting heavy objects. (Id.).  Plaintiff stated that he is able to operate a riding mower for an "hour or so...every day or two."  (Id.).  Plaintiff testified that his pain level was in the "eight to ten range" for about two weeks after moving a large television using a small dolly.  (Tr. 49).

Plaintiff stated that, on a typical day, he gets up at 8:00 to 9:00 a.m., eats bacon and eggs for breakfast, mows his lawn, reads, watches television, and feeds his cats.  (Id.).  Plaintiff testified that he spends most of his time reading.  (Id.).  Plaintiff stated that he tries to go to bed at around 11:00 p.m., but he often experiences difficulty falling asleep.  (Tr. 50).  Plaintiff testified that about one third of the time, he is unable to fall asleep, and gets up after about one hour.

(Id.).  Plaintiff stated that he then stays up about two more hours before trying to fall asleep. (Id.).

Plaintiff testified that he does not experience pain when he is sitting.  (Id.).  Plaintiff stated that he is able to sit for about four hours before he has to get up and stretch.  (Id.). Plaintiff testified that working on the computer for more than ten minutes causes shoulder pain, but it does not bother his left wrist.  (Id.).

Plaintiff stated that he is able to stand for about fifteen minutes.  (Tr. 51).

Plaintiff testified that he is able to walk with a cane for about thirty minutes if he is not carrying anything.  (Id.).

Plaintiff stated that it was suggested to him a few years prior to the hearing that he might have Asperger's disorder.  (Id.).  Plaintiff testified that he experiences difficulty relating to people. (Id.).  Plaintiff stated that he has no close friends.  (Tr. 52).

Plaintiff testified that he has changed jobs frequently because he was trying to find better-paying jobs, and because he often experienced difficulty getting along with other employees or managers.  (Id.).

The ALJ then re-examined plaintiff, who testified that he takes medication for heartburn, high blood pressure, and cholesterol, which is prescribed by a doctor at the Community Care Clinic.  (Tr. 53).  Plaintiff stated that he also takes Naproxen.[2]  (Id.).  Plaintiff testified that he last saw a doctor at the Community Care Clinic approximately a month-and-a-half prior to the hearing.  (Tr. 54).

---

[2]Naproxen is a non-steroidal anti-inflammatory drug indicated for the treatment of arthritis.  See Physician's Desk Reference (PDR), 2632 (63rd Ed. 2009).

Plaintiff stated that he smokes a half package of cigarettes a day. (<u>Id.</u>). Plaintiff testified that he drinks an average of three to four alcoholic drinks a week. (<u>Id.</u>).

Plaintiff stated that he does not belong to a church or any clubs or organizations. (<u>Id.</u>).

Plaintiff testified that he cooks meals, such as bacon and eggs for breakfast, and spaghetti for dinner. (Tr. 55). Plaintiff stated that he does his own laundry. (<u>Id.</u>).

Plaintiff testified that he watches some television shows on his computer. (<u>Id.</u>). Plaintiff stated that he also checks his email. (<u>Id.</u>).

Plaintiff testified that a psychologist suggested to plaintiff's mother that plaintiff may have Asperger's disorder, although he has never seen a psychologist. (<u>Id.</u>). Plaintiff stated that he discussed this with his treating doctors at the Community Care Clinic about six months prior to the hearing, and they recommended that he see a psychologist or psychiatrist. (<u>Id.</u>). Plaintiff testified that he did not request a referral because he is unable to afford to see a psychologist or psychiatrist. (Tr. 56).

Plaintiff stated that he uses food stamps to purchase food. (<u>Id.</u>). Plaintiff testified that his parents send him $50.00 every two weeks, which he uses to purchase gasoline and cigarettes. (<u>Id.</u>). Plaintiff stated that he receives his prescriptions at either a reduced cost or no cost, through the Community Care Clinic. (<u>Id.</u>).

Plaintiff testified that he met with a counselor at Vocational Rehabilitation pursuant to the recommendation of Dr. Mace, but he was told that he was not eligible for services. (<u>Id.</u>).

Plaintiff testified that he has not applied for any medical insurance benefits because he did not believe he was eligible. (Tr. 57).

The ALJ examined vocational expert John Stephen Dolan, who testified that plaintiff has

performed the following jobs above the substantial gainful activity level: product assembler (semi-skilled, medium); outside deliverer (unskilled, light); and electrician helper (semi-skilled, heavy). (Tr. 58).

The ALJ asked Mr. Dolan to assume a hypothetical individual with the following limitations: able to lift ten pounds occasionally, less than ten pounds frequently; stand and/or walk for a total of at least two hours in an eight-hour day with normal breaks; sit for at least six hours in an eight-hour day with normal breaks; unable to climb ladders, ropes or scaffolds; must avoid dangerous machinery, unprotected heights, and other hazards; only occasional overhead reaching with the dominant arm; and no more than occasional forceful grasping or handling with the non-dominant hand. (Tr. 58-59). Mr. Dolan testified that the individual would be unable to perform any of plaintiff's past work. (Tr. 59). Mr. Dolan stated that the individual would be able to perform other work, such as telephone sales (5,000 positions in Missouri); sedentary cashier (6,000 positions in Missouri); and food and beverage order clerk (3,000 positions in Missouri). (Id.).

The ALJ next asked Mr. Dolan to assume an individual with the same factors as the first hypothetical with the additional limitations of jobs involving understanding, remembering and following simple instructions and directions in a routine work place setting. (Id.). Mr. Dolan testified that this would not affect the jobs he mentioned. (Id.).

The ALJ then asked Mr. Dolan to assume the same factors as the second hypothetical with the additional limitation of no more than occasional contact with the public on the job. (Id.). Mr. Dolan testified that this limitation would eliminate the jobs he mentioned. (Id.).

Plaintiff's attorney next asked Mr. Dolan to assume the factors of the first hypothetical

with the additional limitation of using a cash register no more than ten minutes at a time without having to take a break. (Tr. 60). Mr. Dolan testified that this limitation would eliminate all of the jobs he mentioned. (Id.).

**B.      Relevant Medical Records**

The record reveals that plaintiff sustained a complex comminuted Colles type fracture[3] of the left wrist on April 29, 2006, when he fell while he was "inebriated." (Tr. 247). Plaintiff also injured his left ankle, and had a laceration under his chin. (Tr. 240). Larry B. Marti, M.D. performed a closed reduction manipulation and applied a splint to plaintiff's left wrist. (Tr. 247). Plaintiff underwent x-rays of his left ankle, which were negative for fracture or dislocation. (Tr. 250). Plaintiff underwent x-rays of his left foot, which revealed a Lisfranc fracture.[4] (Tr. 251).

Plaintiff saw Eric Willoughby, MS, CNP, on May 10, 2006, at which time plaintiff complained of moderate foot pain with occasional tingling in his toes. (Tr. 254). Plaintiff was wearing a healing hard sole shoe. (Id.). Mr. Willoughby's assessment was left distal radius fracture, and left foot Lisfranc fracture. (Id.). Mr. Willoughby placed plaintiff in a short arm fiberglass cast, and referred plaintiff to a podiatrist for his foot fracture. (Tr. 255).

Plaintiff saw Mark A. Schumaker, D.P.M., on May 10, 2006, at which time plaintiff rated his left foot pain as an eight to ten on a scale of one to ten. (Tr. 300). Upon examination, Dr. Schumaker noted a mild amount of edema. (Id.). Dr. Schumaker's assessment was Lisfranc's

---

[3]A fracture of the distal radius with displacement and/or angulation of the distal fragment dorsally. Stedman's at 769.

[4]Fracture of the foot in which one or all of the metatarsals are displaced. See Stedman's at 1016.

fracture/dislocation with possible multiple fractures not well-visualized on x-ray. (Id.). Dr. Schumaker recommended surgery, but plaintiff indicated that he wished to consider his options. (Id.). Plaintiff absolutely refused a walking cast and splint, and indicated that he would not use a wheelchair. (Id.). Dr. Schumaker stated that he repeatedly advised plaintiff that, without any form of treatment, his injury would progressively become more painful and he might have a high incidence of traumatic arthritis within these joints. (Id.).

Plaintiff saw Robert Pearson, D.P.M., for evaluation of his left foot injury. (Tr. 293). Dr. Pearson placed plaintiff in a CAM walker for four weeks and indicated that he would consider surgery if plaintiff did not improve. (Tr. 294).

Plaintiff saw Mr. Willoughby on June 7, 2007, for follow-up regarding his left wrist fracture. (Tr. 253). Upon examination, mild tenderness of the left wrist was noted with palpation. (Id.). Mr. Willoughby's assessment was left distal radius fracture (healing). (Id.). Mr. Willoughby gave plaintiff a lace-up wrist splint, and instructed plaintiff regarding strengthening exercises. (Id.).

Plaintiff saw Dr. Pearson on June 10, 2006, at which time he reported little improvement of his left foot pain. (Tr. 291). Dr. Pearson continued plaintiff in the CAM walker, and noted that surgery would be considered if plaintiff's symptoms did not improve. (Id.).

Plaintiff underwent x-rays of the left foot on June 27, 2006, which was within normal limits. (Tr. 295).

Plaintiff saw Mr. Willoughby on July 6, 2006, for follow-up regarding his left wrist fracture. (Tr. 252). Plaintiff reported no left wrist pain or numbness, and was taking no medication. (Id.). Mr. Willoughby's assessment was left distal radius fracture (healing). (Id.).

Mr. Willoughby discontinued use of the wrist splint other than during periods of increased activity. (Id.).

Plaintiff saw Dr. Pearson on July 27, 2006, at which time plaintiff reported that he believed his foot had reached a stable point where it ceased to get better. (Tr. 289). Plaintiff indicated that he was unable to place a lot of pressure on the ball of his foot, and that he was using a cane to maintain balance. (Id.). Dr. Pearson noted that plaintiff walked crooked. (Id.). Dr. Pearson indicated that he would continue to see how plaintiff responded to immobilization. (Id.).

Plaintiff saw Joann Mace, M.D. on September 30, 2008, for a consultative examination. (Tr. 259-63). Plaintiff complained of an aching and stabbing pain in his left foot, aching pain in his left wrist, and aching and stabbing pain in his right shoulder and elbow. (Tr. 260). Plaintiff reported that his mother believes he has Asperger's disorder. (Tr. 259). Upon examination, plaintiff was comfortable in sitting position, used a cane for ambulation, could not ambulate safely without the cane, was unable to stand in position for tandem walking, required assistance for heel/toe standing due to loss of balance, and declined to squat due to pain. (Tr. 262). Plaintiff's straight leg raise test was negative bilaterally. (Id.). Dr. Mace's impression was Asperger's syndrome; left foot fracture, left foot ligament disruption, rib fractures, and left wrist fracture with non-anatomic alignment healing due to 2006 fall from a bridge; right shoulder injury in 2000; right elbow injury in 2008; left elbow fracture at age 10; and nicotine dependency. (Tr. 263). Dr. Mace stated that plaintiff has considerable joint pain and instability, especially in his ankle, due to his 2006 fall. (Id.). Dr. Mace stated that plaintiff's impairments:

> combine synergistically creating functional impairments greater than expected based on a simple sum of those impairment rendering him unemployable in today's labor market.

Vocational rehabilitation is recommended, but assessing the degree to which Asperger's syndrome affects his functioning particularly in social (work) environments will be crucial in that regard.

(Id.).

Plaintiff presented to Community Care Clinic on August 7, 2009, at which time plaintiff reported that he could walk with a cane with minimal pain, but he experienced severe pain with any activity when not using a cane. (Tr. 310). Plaintiff complained of numbness in his hands and difficulty grasping objects. (Id.).

Plaintiff presented to Michael R. Sullivan, D.P.M., on September 8, 2009, with complaints of left foot pain. (Tr. 297). Plaintiff indicated that his pain was diminished when using a cane. (Id.). Upon examination, plaintiff had full muscle strength, some deformity, stable range of motion, and some mild tenderness. (Id.). Dr. Sullivan's assessment was Lisfranc joint arthritis and previous injury three years ago left foot, and pain with ambulation. (Id.). Plaintiff indicated that he did not wish to proceed with either an injection, offloading, or surgery, and that his pain was manageable when he uses a cane. (Id.). Dr. Sullivan gave plaintiff a prescription for a cane. (Id.).

Plaintiff presented to Kevin A. Kline, D.O., with complaints of left wrist and right shoulder pain. (Tr. 303). Plaintiff reported that he was unable to rotate the wrist and had diminished grip strength. (Id.). Plaintiff was offered a shoulder injection, and plaintiff indicated that he would follow-up if he decided to have the injection. (Id.). Plaintiff was instructed that repetitive or vigorous activities will make his shoulder hurt. (Id.).

Plaintiff saw Thomas J. Spencer, Psy.D. for a psychological evaluation on November 25, 2009. (Tr. 380-84). Plaintiff's chief complaint was that his mother was convinced that he had

certain mental conditions, including Asperger's disorder. (Tr. 380). Plaintiff reported that he was

not being treated for any mental health issues and had not seen a mental health professional since

his teens. (Id.). Plaintiff indicated that his ankle and wrist cause discomfort, but when he uses a

cane the discomfort is not as bad. (Id.). Plaintiff reported that he only had one friend, and that he

had not spoken to him in about six months. (Id.). Plaintiff stated that he counted his steps, and

that he experienced a "small amount of anxiety" when he did not count. (Id.). Plaintiff reported

experiencing anxiety attacks. (Id.). Upon mental status examination, plaintiff cooperated with his

examiner but had trouble elaborating on symptoms. (Tr. 382). Plaintiff's speech was within

normal limits, his affect was restricted, his flow of thought was intact and organized, and his

insight and judgment were questionable. (Id.). Dr. Spencer diagnosed plaintiff with anxiety

disorder NOS,[5] and rule out Asperger's disorder, and assessed a GAF score[6] of 55-60.[7] (Tr.

384). Dr. Spencer stated that plaintiff has a mental illness that does "not necessarily interfere with

his ability to engage in employment suitable for his age, training, experience, and/or education."

(Id.). Dr. Spencer stated that, although "the possibility exists that he may have Asperger's, his

ability to work and/or interact socially is not markedly impaired as a result of his condition."

_____

[5]A disorder with prominent anxiety or phobic avoidance that does not meet criteria for any specific anxiety disorder. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 444 (4th Ed. 1994).

[6]The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness" which does "not include impairment in functioning due to physical (or environmental) limitations." DSM-IV at 32.

[7]A GAF score of 51-60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 32.

(Id.).

Dr. Spencer completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), in which he expressed the opinion that plaintiff had no limitations in his ability to understand, remember, and carry out instructions; moderate limitations in his ability to respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting; and slight limitations in his ability to interact appropriately with the public, interact appropriately with supervisors, and interact appropriately with co-workers. (Tr. 385-86).

Plaintiff saw Bobby Enkvetchakul, M.D., at Missouri Occupational Medicine, on December 2, 2009, for a consultative examination. (Tr. 321-24). Plaintiff complained of pain in the right shoulder, left wrist, and left foot. (Tr. 321). Plaintiff reported that he had not seen any doctors for either his left wrist or his left foot until very recently when he sought some evaluations from physicians "apparently in preparation for his disability examination." (Id.). Plaintiff reported that he had looked for work recently, but no one would hire him. (Tr. 322). Upon examination, plaintiff was in no active distress, appeared very comfortable in a seated position, and had a normal affect. (Id.). Plaintiff rose from a seated position, and could get on and off the examination without any assistance. (Id.). Plaintiff ambulated with a cane in his right hand, although he did not appear to be placing too much weight or support on the cane. (Id.). Plaintiff was able to do a full squat without any difficulty, was able to flex forward at the waist ninety degrees, and was able to touch his toes. (Id.). Plaintiff had full range of motion of the shoulder, with no tenderness over the right shoulder. (Id.). Plaintiff's grip strength was weaker on the left as compared to the right. (Id.). A clear deformity was noted to the left wrist. (Id.). Examination

of the left foot revealed no swelling or deformity, but some minimal tenderness. (Id.). Plaintiff was able to fully weight bear. (Id.). Dr. Enkvetchakul diagnosed plaintiff with status post left distal radius fracture with some residual deformity; status post Lisfranc injury to the left foot; and right shoulder pain. (Id.). Dr. Enkvetchakul stated that plaintiff had some deformity and limitation of motion at the wrist that would cause some activity limitations, but for the most part on examination his findings were really very mild, at least with respect to pain complaints. (Id.). Dr. Enkvetchakul noted that, although plaintiff had subjective complaints of right shoulder pain, there were no significant findings upon examination. (Tr. 323). Dr. Enkvetchakul stated that it was reasonable for plaintiff to use a cane, particularly with long distances. (Id.). Dr. Enkvetchakul found that plaintiff would have difficulty handling objects with the left upper extremity that require full supination at the wrist in order to hold something in a perfectly horizontal position. (Id.). Dr. Enkvetchakul stated that long periods of travel might be limiting for plaintiff, although he could drive to and from a work place. (Id.).

Dr. Enkvetchakul completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he expressed the opinion that plaintiff could continuously lift and carry up to twenty pounds, frequently lift and carry up to fifty pounds, and occasionally lift and carry up to one hundred pounds. (Tr. 315). Dr. Enkvetchakul found that plaintiff could sit for eight hours without interruption, stand for two hours without interruption, stand a total of eight hours in an eight-hour workday, walk for two hours without interruption, and walk for a total of eight hours in an eight-hour workday. (Tr. 316). Dr. Enkvetchakul stated that plaintiff did not require a cane for ambulation, although it would be reasonable to use a cane when walking long distances. (Id.). Dr. Enkvetchakul found that plaintiff had no limitations in the use of his hands

or feet, except that he could use his left foot frequently rather than continuously. (Tr. 317). Dr. Enkvetchakul indicated that plaintiff should only occasionally climb ladders or scaffolds. (Tr. 318). Dr. Enkvetchakul found that plaintiff had no environmental limitations. (Tr. 319).

## The ALJ's Determination

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since April 29, 2006, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: arthritis of the acromioclavicular joint and toes, residual effects of left distal radius fracture, residual effects of Lisfranc injury to the left foot, and anxiety disorder, not otherwise specified (20 CFR 404.1520(c) and 416.920(c)).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift ten pounds occasionally, lift less than ten pounds frequently; stand/walk at least two hours out of eight with the usual breaks; sit at least six hours of eight hours with the usual breaks; no climbing ladders or scaffolds; must avoid hazards; occasional overhead reaching or lifting with the dominant (right) arm and hand; and occasional forceful grasping or handling with the non-dominant hand. The claimant is limited to jobs involving understanding, remembering, and following simple instructions and directions in a routine work setting (20 CFR 404.1567(a) and 416.967(a).

5.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

6.  The claimant was born on April 17, 1971 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8.  The claimant has acquired work skills from past relevant work as a cashier (20

CFR 404.1568 and 416.968).

9.       Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, from April 29, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-18).

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability insurance benefits protectively filed on August 7, 2008, the claimant is not disabled under sections 216(I) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on August 19, 2008, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 18-19).


## Discussion

### A.    Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency. See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it. See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion. See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998). If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's

findings, the denial of benefits must be upheld. <u>See</u> <u>Robinson v. Sullivan</u>, 956 F.2d 836, 838 (8th Cir. 1992). The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision. <u>See</u> <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996). "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary." <u>Burress v. Apfel</u>, 141 F.3d 875, 878 (8th Cir. 1998). The analysis required has been described as a "searching inquiry." <u>Id.</u>

**B.** **<u>The Determination of Disability</u>**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a). The claimant has the burden of proving that s/he has a disabling impairment. <u>See</u> <u>Ingram v. Chater</u>, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); <u>Fines v. Apfel</u>, 149 F.3d 893, 894-895 (8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920 (b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. <u>See</u> 20 C.F.R §§ 404.1520 (c), 416.920 (c). To qualify as severe, the impairment must

significantly limit the claimant's mental or physical ability to do "basic work activities."  Id.  Age, education and work experience of a claimant are not considered in making the "severity" determination.  See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  This listing is found in Appendix One to 20 C.F.R. 404.  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work.  See 20 C.F.R. § 404.1520 (e), 416.920 (e).  If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled.  See id.  If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f).  The claimant is entitled to disability benefits only if s/he is not able to perform any other work.  See id.  Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work.  See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

The Commissioner has supplemented this five-step process for the evaluation of claimants

with mental impairments. See 20 C.F.R. §§ 404.1520a (a), 416.920a (a). A special procedure must be followed at each level of administrative review. See id. Previously, a standard document entitled "Psychiatric Review Technique Form" (PRTF), which documented application of this special procedure, had to be completed at each level and a copy had to be attached to the ALJ's decision, although this is no longer required. See 20 C.F.R. §§ 404.1520a (d), (d) (2), (e), 416.920a (d), (d) (2), (e); 65 F.R. 50746, 50758 (2000). Application of the special procedures required is now documented in the decision of the ALJ or Appeals Council. See 20 C.F.R. §§ 404.1520a (e), 416.920a (e).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. See 20 C.F.R. §§ 404.1520a (b) (1), 416.920a (b) (1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. See 20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. See id. Next, the Commissioner must determine the severity of the impairment based on those ratings. See 20 C.F.R. §§ 404.1520a (c), 416.920a (c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. See

20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).  This is completed by comparing the presence of

medical findings and the rating of functional loss against the paragraph A and B criteria of the

Listing of the appropriate mental disorders.  See id.  If there is a severe impairment but the

impairment does not meet or equal the listings, then the Commissioner must prepare a residual

functional capacity assessment.  See 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3); Pratt, 956

F.2d at 834-35; Jones v. Callahan, 122 F.3d 1148, 1153 n.5 (8th Cir. 1997).

**C.**      **Plaintiff's Claims**

Plaintiff first argues that the ALJ erred in assessing the credibility of his subjective

complaints of pain and limitations.  Plaintiff next argues that the ALJ erred in determining

plaintiff's residual functional capacity and in relying on vocational testimony to find that plaintiff

was not disabled.  The undersigned will discuss plaintiff's claims in turn.

**1.**      **Credibility Analysis**

Plaintiff argues that the ALJ erroneously found plaintiff's subjective complaints of pain

and limitation not credible.  Specifically, plaintiff contends that the ALJ erred in rejecting his

subjective complaints based on his failure to seek medical treatment.

"While the claimant has the burden of proving that the disability results from a medically

determinable physical or mental impairment, direct medical evidence of the cause and effect

relationship between the impairment and the degree of claimant's subjective complaints need not

be produced."  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  Although an ALJ may

reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make

an express credibility determination detailing reasons for discrediting the testimony, must set forth

the inconsistencies, and must discuss the Polaski factors."  Kelley, 133 F.3d at 588.  Polaski

requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of the medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322. See also Burress, 141 F.3d at 880; 20 C.F.R. § 416.929.

The court finds that the ALJ's credibility determination regarding plaintiff's subjective complaints of pain and limitations is supported by substantial evidence in the record as a whole. "[T]he question is not whether [plaintiff] suffers any pain; it is whether [plaintiff] is fully credible when she claims that [the pain] hurts so much that it prevents h[im] from engaging in h[is] prior work." Benksin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). Thus, the relevant inquiry is whether or not plaintiff's complaints of pain to a degree of severity to prevent him from working are credible.

In his opinion, the ALJ pointed out Polaski factors and other inconsistencies in the record as a whole that detract from plaintiff's complaints of disabling pain. The ALJ first stated that the medical evidence does not support plaintiff's subjective complaints. Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003).

The ALJ first noted that, on May 10, 2006, Dr. Schumaker advised plaintiff that he needed surgery, but plaintiff refused a walking cast and splint, and indicated that he would not use a wheelchair. (Tr. 16, 300). The ALJ noted that Dr. Schumaker repeatedly advised plaintiff that, without any form of treatment, his foot would become progressively more painful and he might

have a high incidence of traumatic arthritis.  (Id.).  The ALJ pointed out that the failure to comply

with prescribed medical treatment is inconsistent with complaints of a disabling condition.  (Tr.

16).  See Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996).

The ALJ next noted that, on September 16, 2009, Dr. Sullivan advised plaintiff that he

could undergo a left foot injection, offloading, or surgery, but plaintiff indicated that he did not

wish to proceed with any of these options and that his pain was manageable when he used his

cane.  (Tr. 16, 297).  "If an impairment can be controlled by treatment or medication, it cannot be

considered disabling."  Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010).

The ALJ also pointed out that plaintiff did not obtain medical treatment for his left wrist

and left foot after June 2006 and July 2006, respectively; and plaintiff did not obtain any treatment

during 2007 and 2008.  (Tr. 16).  A lack of regular treatment for an alleged disabling condition

detracts from a claimant's credibility.  See Comstock v. Chater, 91 F.3d 1143, 1146-47 (8th Cir.

1996).  Plaintiff claims that his lack of financial resources justified his failure to seek medical

treatment.  There is no evidence, however, that plaintiff attempted to obtain treatment and was

denied such treatment due to insufficient funds or insurance.  See, e.g. Riggins v. Apfel, 177 F.3d

689, 693 (8th Cir. 1999) (ALJ appropriately discounted claimant's argument he could not afford

medical care absent evidence he sought and was denied low-cost or free care); Johnson v. Bowen,

866 F.2d 274, 275 (8th Cir. 1989) (although lack of funds may sometimes justify failure to seek

medical care, there was no evidence plaintiff had told his physicians he could not afford the

prescription at issue and was denied the medication).

The ALJ next noted that none of plaintiff's treating physicians have found that plaintiff is

unable to work, or found him to be in any distress.  (Tr. 16).  A lack of restrictions imposed by

treating physicians is inconsistent with allegations of disabling pain.  See Brown v. Chater, 87 F.3d at 965.

The ALJ stated that plaintiff had not been prescribed any strong pain medications.  (Tr. 17).  A lack of strong pain medication is inconsistent with subjective complaints of disabling pain. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999).

Finally, the ALJ pointed out that plaintiff told Dr. Enkvetchakul that he had looked for work recently, but no one would hire him.  (Tr. 16, 322).  Plaintiff's statement that he was seeking work is inconsistent with plaintiff's allegation of disability.  See Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).  He also told Dr. Enkvetchakul that he had not seen any doctors for either his left wrist or his left foot until very recently when he sought some evaluations from physicians.

An administrative opinion must establish that the ALJ considered the appropriate factors. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001).  However, each and every Polaski factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints.  See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001).  In this case, the reasons given above by the ALJ for discrediting plaintiff's complaints of disabling pain are sufficient and his finding that plaintiff's complaints are not credible is supported by substantial evidence.

Accordingly, the undersigned recommends that the decision of the Commissioner denying plaintiff's benefits be affirmed as to this point.

**2.      Residual Functional Capacity**

Plaintiff argues that there is no evidence in the record that supports the ALJ's RFC determination.  Plaintiff also argues that the ALJ failed to evaluate the combined effect of all of plaintiff's impairments.

The ALJ made the following determination regarding plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift ten pounds occasionally, lift less than ten pounds frequently; stand/walk at least two hours out of eight with the usual breaks; sit at least six out of eight hours with the usual breaks; no climbing ladders or scaffolds; must avoid hazards; occasional overhead reaching or lifting with the dominant (right) arm and hand; and occasional forceful grasping or handling with the non-dominant hand.  The claimant is limited to jobs involving understanding, remembering, and following simple instructions and directions in a routine work setting (20 CFR 404.1567(a) and 416.967(a).

(Tr. 13-14).

A disability claimant's RFC is the most he or she can still do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  In <u>McCoy v. Schweiker</u>, 683 F.2d 1138 (8th Cir. 1982) (en banc), the Eighth Circuit defined RFC as the ability to do the requisite work-related acts "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." <u>Id.</u> at 1147.  The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000)).

Although a claimant's RFC is determined at step four of the sequential evaluation process, where the burden of proof rests on the claimant, the ALJ bears the primary responsibility for determining a claimant's RFC.  <u>Id.</u>  As noted, an RFC is based on all relevant evidence, but it "remains a medical question" and "'some medical evidence must support the determination of the

claimant's [RFC].'" Id. at 1023 (quoting Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001)). The ALJ is therefore required to consider at least some supporting evidence from a medical professional. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

The undersigned finds that the ALJ's RFC determination is supported by substantial evidence. In determining plaintiff's RFC, the ALJ first properly assessed the credibility of plaintiff's subjective complaints of pain and limitations as discussed above. The ALJ next discussed and weighed the medical opinion evidence. In analyzing medical evidence, "[i]t is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'" Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (quoting Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)).

The ALJ stated that he was assigning "some weight" to consultative physician Dr. Mace's opinion regarding plaintiff's physical limitations. (Tr. 17). The ALJ indicated that he was assigning no weight to Dr. Mace's statement that plaintiff's impairments render him unemployable because this finding is not supported by the medical evidence or plaintiff's allegations to Dr. Enkvetchakul that he was looking for work. (Id.).

Dr. Enkvetchakul examined plaintiff on December 2, 2009, and found that plaintiff had some limitation of motion of the left wrist that would cause some activity limitations, but for the most part on examination his findings were very mild. (Tr. 322). Dr. Enkvetchakul noted that, although plaintiff had subjective complaints of right shoulder pain, there were no significant findings upon examination. (Tr. 323). Dr. Enkvetchakul found that plaintiff would have difficulty handling objects with the left upper extremity that require full supination at the wrist in order to hold something in a perfectly horizontal position. (Id.). Dr. Enkvetchakul expressed the opinion

that plaintiff could continuously lift and carry up to twenty pounds, frequently lift and carry up to fifty pounds, and occasionally lift and carry up to one hundred pounds. (Tr. 315). Dr. Enkvetchakul found that plaintiff could sit for eight hours without interruption, stand for two hours without interruption, stand a total of eight hours in an eight-hour workday, walk for two hours without interruption, and walk for a total of eight hours in an eight-hour workday. (Tr. 316). Dr. Enkvetchakul stated that plaintiff did not require a cane for ambulation, although it would be reasonable to use a cane when walking long distances. (Id.). Dr. Enkvetchakul found that plaintiff had no limitations in the use of his hands or feet, except that he could use his left foot frequently rather than continuously. (Tr. 317). Dr. Enkvetchakul indicated that plaintiff should only occasionally climb ladders or scaffolds. (Tr. 318).

The ALJ's physical RFC determination is consistent with the opinion of Dr. Enkvetchakul. The ALJ incorporated Dr. Enkvetchakul's findings regarding plaintiff's left wrist limitations, right shoulder limitations, and climbing limitations. The ALJ's RFC assessment is more restrictive than Enkvetchakul's findings regarding plaintiff's ability to lift, sit, and stand. The ALJ's RFC determination is also consistent with the remainder of the medical record, which reveals that plaintiff did not seek regular medical treatment, received only conservative treatment, and reported that his pain was manageable when he used a cane. As such, the ALJ's physical RFC is supported by substantial evidence in the record as a whole.

With regard to plaintiff's mental RFC, the ALJ limited plaintiff to jobs involving understanding, remembering, and following simple instructions and directions in a routine work setting. (Tr. 14). This determination is supported by the finding of consultative examiner Dr. Spencer, who diagnosed plaintiff with anxiety disorder NOS, and found that plaintiff's mental

impairment did not necessarily interfere with his ability to work. (Tr. 384). Dr. Spencer expressed the opinion that plaintiff had moderate limitations in his ability to respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting; and only slight limitations in his ability to interact appropriately with the public, interact appropriately with supervisors, and interact appropriately with co-workers. (Tr. 385-86). The ALJ incorporated these findings in his mental RFC. There is no evidence of any greater limitations. In fact, plaintiff was not being treated for any mental health issues.

Plaintiff also argues that the ALJ erred in failing to consider the combined effects of plaintiff's various impairments. When a claimant asserts multiple impairments, the Commissioner must "consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling." Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir. 2000) (citing 20 C.F.R. § 404.1523). This requirement applies to both physical and mental impairments. Id.; Delrosa v. Sullivan, 922 F.2d 480, 484 (8th Cir. 1991). Where, as here, the ALJ discusses and considers each of a claimant's impairments, his complaints of pain, and his daily activities, and then concludes that his impairments are not disabling, there is no error. See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (holding that, in such circumstances, "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable") (internal quotations omitted).

After properly determining plaintiff's RFC, the ALJ posed a hypothetical question to a vocational expert consistent with this RFC. (Tr. 58-59). The vocational expert testified that plaintiff could perform work as a telephone salesperson, cashier, and order clerk. (Tr. 59). The ALJ relied on this vocational testimony to find that plaintiff was not disabled. (Tr. 18).

Testimony from a vocational expert based on a properly phrased hypothetical question constitutes substantial evidence upon which to base an award or denial of Social Security benefits. See Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001).

Accordingly, the undersigned recommends that the decision of the Commissioner be affirmed.

## **RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner denying plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act, and Supplemental Security Income under Title XVI of the Act be **affirmed**.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this __7th__ day of June, 2012.

_Lewis M. Blanton_
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE